BELL & HUDSON, PC v BUHL REALTY COMPANY

Docket Nos. 109190, 109191, 109192. Submitted June 26, 1990, at Detroit. Decided October 15, 1990.

Following an arson and shooting by Robert Harrington at the Bell & Hudson law firm located in the Buhl Building in Detroit in which one person was killed and several others were seriously injured, plaintiffs, Bell & Hudson, P.C., and others, brought three separate negligence actions in the Wayne Circuit Court against defendants, Buhl Realty Company, Robert Harrington, Gerald Harrington, and others. Gerald Harrington, Robert Harrington's brother, moved for summary disposition in all three cases arguing that he owed no duty to the plaintiffs to protect them from his brother. The trial court, Marianne O. Battani, J., denied the motion, ruling that there was a question of fact concerning such duty. Gerald Harrington appealed by leave granted. The cases were consolidated on appeal.

The Court of Appeals *held:*

The family relationship of the Harrington brothers is not sufficient to impose a duty on Gerald to protect the general public from his brother. Nor can a legal duty be imposed because of Gerald's voluntary attempt to warn plaintiffs about his brother's intentions. Gerald's actions did not increase the danger and may, in fact, have prevented further damage. The trial court erred in finding that there was a question of fact concerning Gerald's duty.

Reversed.

1. NEGLIGENCE — DUTY.

The threshold question in any negligence action is whether the defendant owed a legal duty to the plaintiff; unless the defendant owed a duty to the plaintiff, the negligence analysis cannot proceed further.

2. NEGLIGENCE — DUTY.

Duty is essentially a question whether the relationship between

REFERENCES

Am Jur 2d, Negligence §§ 83, 86, 87, 100, 104, 107-109, 141.

See the Index to Annotations under Brothers and Sisters; Criminal Law; Negligence; Rescue; Third Persons; Volunteers.

the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person; questions of duty are generally for the court to decide.

3. NEGLIGENCE — DUTY — SPECIAL RELATIONSHIPS — THIRD PERSONS — CRIMINAL ATTACKS.

A private person generally has no duty to protect another from a criminal attack by a third person in the absence of some special relationship between the parties or some special circumstances; the family relationship of brothers is not by itself a special relationship sufficient to impose a duty on one brother to protect the general public from the other brother.

4. NEGLIGENCE — DUTY — SPECIAL CIRCUMSTANCES — THIRD PERSONS — RESCUERS.

Special circumstances may give rise to a duty of a private person to protect another from a criminal attack by a third person; when a person voluntarily attempts to aid a victim and takes control of the situation, he must use due care or act so as not to unreasonably endanger the person or property of another; liability will only be imposed when the voluntary rescuer's actions increase the original damage.

*Collins, Einhorn & Farrell, P.C.* (by *Noreen L. Slank* and *Gerald A. Pawlak*), for Gerald Harrington.

Before: MICHAEL J. KELLY, P.J., and GILLIS and GRIBBS, JJ.

GRIBBS, J. This consolidated appeal arises out of the June 11, 1982, arson and shooting at the Detroit Buhl Building in which one person was killed and several others were seriously injured. Defendant Gerald Harrington (Gerald) appeals by leave granted from the denial of defendants' motions for partial summary disposition. We reverse.

At approximately 11:00 A.M., on June 11, 1982, Gerald received a telephone call at work from his sister-in-law, Katherine Harrington. Katherine told Gerald that Gerald's brother, Robert Harrington, was going to the law firm of Bell & Hudson, P.C., to demand the return of his $2,500 retainer.

Bell & Hudson's offices were located in the Buhl Building. Katherine said that Robert "just left" and that he was carrying a shotgun, a pistol and a jar of gasoline.

Gerald believed it would take Robert some time to reach the downtown office. He decided to walk over to Bell & Hudson's offices, approximately five minutes away, to warn them about his brother. Before he left, Gerald telephoned a family-owned party store to see if Robert was there. Gerald left for Bell & Hudson's office one or two minutes after receiving Katherine's telephone call.

When Gerald arrived at the Buhl Building, he stopped to check the building directory for Bell & Hudson's suite number. While he was standing in front of the directory he heard someone shout to a security guard that a shot had been fired in Bell & Hudson's office. Gerald went up the elevator and arrived in Bell & Hudson's reception area at approximately 11:15 A.M. Gerald found his brother Robert in one of the corridors. Robert was in a crouched position, holding a shotgun. By the time Gerald arrived, Robert had already used the gasoline to start a fire in the offices and had already killed Eve August and wounded Edward Bell. Several other firm employees suffered serious injuries when they fell from the eighth-floor windows in an attempt to escape the gunman and fire.

Although Robert threatened him and fired additional shots, Gerald argued and struggled with his brother until police arrived.

Robert Harrington was convicted of first-degree murder, MCL 750.316; MSA 28.548, and was sentenced to life imprisonment without parole.

Three separate actions were filed against Gerald Harrington and others for the personal injuries sustained during this incident. Plaintiffs generally contended that Gerald owed a duty of reasonable

care to plaintiffs because of Gerald's special relationship to his brother, Robert Harrington. Plaintiffs also alleged that once Gerald rendered assistance to plaintiffs he was required to use reasonable care.

Gerald Harrington moved for summary disposition in all three cases, arguing that he owed no duty to plaintiffs to protect them from his brother. The trial court denied Gerald Harrington's motion, ruling that there was a question of fact concerning Gerald's duty that should be decided by a jury. We disagree.

The threshold question in any negligence action is whether the defendant owed a legal duty to the plaintiff. *Papadimas v Mykonos Lounge,* 176 Mich App 40, 45; 439 NW2d 280 (1989), lv den 433 Mich 909 (1989); *Cook v Bennett,* 94 Mich App 93, 97-98; 288 NW2d 609 (1979). Unless the defendant owed a duty to the plaintiff, the negligence analysis cannot proceed further. *Id.* "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977). Questions of duty are generally for the court to decide. *Moning, supra* at 437.

In this case, plaintiffs' theories against Gerald Harrington allege nonfeasance, or failure to act, by not calling the police or plaintiffs in a timely manner to warn them of Robert Harrington's intentions. As a general rule, a private person has no duty to protect another from a criminal attack by a third person in the absence of some special relationship between the parties or some special circumstance. *Roberts v Pinkins,* 171 Mich App 648, 652; 430 NW2d 808 (1988), lv den 432 Mich 903 (1989). "Special relationships" recognized un-

der Michigan law include landlord-tenant, *Samson v Saginaw Professional Bldg, Inc,* 393 Mich 393; 224 NW2d 843 (1975), proprietor-patron, *Askew v Parry,* 131 Mich App 276; 345 NW2d 686 (1983), employer-employee, *Blake v Consolidated Rail Corp,* 129 Mich App 535; 342 NW2d 599 (1983), residential invitor-invitee, *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965), psychiatrist-patient, *Hinkelman v Borgess Medical Center,* 157 Mich App 314, 321-322; 403 NW2d 547 (1987), lv den 428 Mich 905 (1987), and doctor-patient, *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985). As plaintiffs argue, three members of our Supreme Court held in *Farwell v Keaton,* 396 Mich 281, 292; 240 NW2d 217 (1976), reh den 397 Mich 958 (1976), that a special relationship arose between social companions "engaged in a common undertaking." We note that we are not bound by plurality decisions of the Supreme Court. *Li v Wong (On Remand),* 170 Mich App 256, 260; 428 NW2d 36 (1988), lv gtd on other grounds 432 Mich 891 (1989). In any event, since there is no evidence in this case of a common undertaking, we believe *Farwell* is distinguishable.

Special circumstances can also give rise to a duty. When a person voluntarily attempts to aid a victim and takes control of the situation, he must use due care or act so as not to unreasonably endanger the person or property of another. *Farwell, supra* at 287-288; *Schenk v Mercury Marine Division, Lowe Industries,* 155 Mich App 20, 25; 399 NW2d 428 (1986), lv den 428 Mich 885 (1987). Liability will only be imposed when the voluntary rescuer's actions increase the original damage. *Schenk, supra* at 25-26.

In this case, the alleged "special relationship" is based upon the fact that Gerald and Robert Harrington are brothers. We reject the premise that

this family relationship is sufficient to impose a duty on Gerald to protect the general public from his brother. See *Petersen v Heflin,* 163 Mich App 402, 407; 413 NW2d 810 (1987).

Nor can a duty be imposed in this case because of Gerald Harrington's voluntary attempt to warn plaintiffs about his brother. The actions of Gerald did not increase the danger and may, in fact, have prevented further damage. As plaintiffs suggest, it is possible (but not certain) that Gerald could have been a more effective rescuer had he telephoned Bell & Hudson instead of walking to their office. Despite the tragedy to all involved, we do not believe retrospective wisdom justifies imposition of a legal duty in this case.

Reversed.