MARCELLETTI v BATHANI

Docket No. 134761. Submitted October 7, 1992, at Grand Rapids. Decided March 15, 1993, at 9:35 A.M. Leave to appeal sought.

Frank Marcelletti, for himself and as next friend of Andrew Marcelletti, and Cindy Marcelletti brought an action in the Van Buren Circuit Court against Valerie and William Lux and Jay Bathani, M.D., alleging that Andrew Marcelletti was severely injured while in the care of Valerie Lux and suffered from shaken baby syndrome. The plaintiffs further alleged that Dr. Bathani previously had treated an unidentified child whom Lux allegedly had abused but had failed to report that fact to authorities. The plaintiffs claimed that Dr. Bathani's failure created both a cause of action under the Child Protection Act and a common-law action sounding in negligence. The trial court, Meyer Warshawsky, J., granted Bathani's motion for summary disposition, holding that the civil cause of action created under the Child Protection Act was available only to the allegedly abused child for whom no report was made and that Dr. Bathani owed no common-law duty to warn third parties, such as the plaintiffs, of his suspicions concerning possible child abuse. The plaintiffs appealed.

The Court of Appeals *held:*

1. Section 13(1) of the Child Protection Act, MCL 722.633(1); MSA 25.248(13)(1), creates civil liability for damages proximately caused by the failure of a person to report an instance of suspected child abuse or neglect in accordance with the requirements of the act. However, that cause of action clearly was intended by the Legislature to be available only to the allegedly abused child about whom no report was filed and was not intended to create a cause of action for third parties. The trial court correctly construed the intent of the statute and found that it did not provide the plaintiffs with a statutory cause of action.

2. Because recognition of a broad duty of a physician to

REFERENCES

Am Jur 2d, Infants § 16; Witnesses § 457.

Validity, construction, and application of state statute requiring doctor or other person to report child abuse. 73 ALR4th 782.

inform the general public of instances of suspected child abuse would run afoul of the privacy of the physician-patient relationship, there is no common-law duty on the part of physicians to warn unidentified, potential victims who are not their patients of their suspicions of child abuse. Because there was no special relationship between Dr. Bathani and either the plaintiffs or the Luxes, Dr. Bathani had no common-law duty to warn the plaintiffs of his suspicions concerning child abuse by Valerie Lux. The trial court properly held that the plaintiffs failed to plead a common-law cause of action in negligence.

Affirmed.

1. ACTIONS — CHILD PROTECTION LAW — CHILD ABUSE — FAILURE TO REPORT.

The statutory civil liability for damages proximately caused by the failure of a person to make a report of suspected child abuse or neglect pursuant to the Child Protection Law creates a cause of action that may be brought by the allegedly abused child but does not create a cause of action that may be brought by third parties (MCL 722.633[1]; MSA 25.248[13][1]).

2. PHYSICIANS AND SURGEONS — CHILD ABUSE — DUTY TO WARN — COMMON LAW.

Physicians have no common-law duty to warn unidentified persons who are not their patients of suspected acts of child abuse.

*Plaszczak & Bauhof, P.C.* (by *James F. Bauhof*), for the plaintiffs.

*Bremer, Wade, Nelson, Mabbitt & Lohr* (by *Judith K. Simonson*), for Jay Bathani.

Before: GRIFFIN, P.J., and NEFF and CORRIGAN, JJ.

CORRIGAN, J. In this negligence action, plaintiffs appeal the grant of summary disposition to defendant Bathani pursuant to MCR 2.116(C)(8). We affirm.

In August 1988, plaintiffs hired defendant Valerie Lux to baby-sit for their infant son Andrew. While in Lux's care, Andrew was allegedly severely injured, displaying symptoms of "shaken

baby syndrome." Plaintiffs sued the baby-sitter for negligence. The complaint further alleged that Dr. Bathani previously had treated an unidentified child whom Lux had allegedly abused and that Bathani suspected but failed to report Lux's abuse of that child,[1] contrary to § 3 of the Child Protection Law, MCL 722.623(1); MSA 25.248(3)(1), with the following result:

> The legal protections for children contained within [MCL 722.628(8);] MSA 25.248(8) et sec. [sic] did not come into place and as a result there was not an investigation as to Defendant Lux, and Defendant Lux continued to babysit as a licensed babysitter in the State of Michigan and the Plaintiffs Marcelletti's [sic] were not able to be warned that Defendant Lux had been suspected of child abuse and as a result the Plaintiff Andrew Marcelletti in August, 1988 was severely injured as described aforesaid.

Plaintiffs also alleged that Bathani negligently failed to report suspected child abuse "as required by the common law."

Bathani sought summary disposition on grounds that he owed no legal duty to plaintiffs. The lower court ruled:

> In the instant action, there existed no relationship between Dr. Bathani and the Marcellettis nor was there a relationship between Dr. Bathani and defendant Lux. The parties have presented no evidence showing any relation between Dr. Bathani and defendant Lux. Alleging that Dr. Bathani examined another child who exhibited battered child symptoms and allegedly did not report this, in and of itself does not create a special relationship which the Court will recognize. Dr.

---

[1] The complaint offered no specific information regarding the other alleged incident of child abuse or Bathani's alleged role in it.

Bathani did not have a relationship with the third-party victim nor with the so-called "dangerous person," defendant Lux.

. . . While defendant Bathani may have had a [moral] obligation to report all suspected abused children, it is not elevated to the level of a legal duty owed by defendant Bathani to a third party to report the suspected child abuse on another child.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Michigan Ins Repair Co, Inc v Manufacturers Nat'l Bank of Detroit,* 194 Mich App 668, 673; 487 NW2d 517 (1992). All factual allegations in support of the claims are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. *Id.* The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Wade v Dep't of Corrections,* 439 Mich 158, 163; 483 NW2d 26 (1992).

In a cause of action arising from a tortious injury, there are four elements: (1) the defendant must have owed a legal duty to the plaintiff; (2) the defendant must have breached the duty owed; (3) there must have been a proximate causal relationship between the breach of such duty and the injury to the plaintiff; and (4) the plaintiff must have suffered damages. *Lorencz v Ford Motor Co,* 439 Mich 370, 375; 483 NW2d 844 (1992). "A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Riddle v McLouth Steel Products Corp,* 440 Mich 85, 96; 485 NW2d 676 (1992). Duty, a

threshold issue, must be decided by the court as a matter of law. *Id.* at 95.

### I. STATUTORY DUTY

Nothing in the Child Protection Law modifies the plaintiffs' burden to prove the existence of a legal duty. Plaintiffs assert that Dr. Bathani had a statutory duty pursuant to the Child Protection Law, MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*, to report the abuse of the unidentified child and that his failure to report the prior incident of abuse proximately cause Andrew's injuries.

MCL 722.623(1); MSA 25.248(3)(1) provides in part:

> A physician . . . who has reasonable cause to suspect child abuse or neglect shall make immediately, by telephone or otherwise, an oral report, or cause an oral report to be made, of suspected child abuse or neglect to the department. Within 72 hours after making the oral report, the reporting person shall file a written report as required in this act.

In addition, MCL 722.633(1); MSA 25.248(13)(1) provides:

> A person, required to report an instance of suspected child abuse or neglect, who is required to report under this act and who failed to do so, is civilly liable for the damages *proximately caused* by the failure. [Emphasis supplied.]

We agree with the circuit court's conclusion that the Legislature intended that liability under the statute be limited to claims for damages by the identified abused child about whom no report was made:

The reporter's liability, under the Act, is based on the failure to report the suspected abuse of that child to the appropriate authorities. The identified abused child is clearly the individual sought to be protected under the Child Protection Act, and continued physical abuse is the harm sought to be prevented. . . .

According to the statute, a doctor's liability is based on his failure to report suspected child abuse and the reports required to be filed relate to that child, including the reporting of the child's name, age, residence and other facts concerning that child. To allow a third child, who was not viewed by the doctor, to recover based on the doctor's failure to report the suspected abuse of another child would extend the civil liability beyond that intended by the Legislature.

No reported Michigan case has considered whether the statutory reporting duty, with its attendant civil liability, runs to any person other than the allegedly abused child. The plaintiffs cite no law on point. Having surveyed jurisdictions that permit private rights of action for failure to comply with child abuse reporting laws,[2] we have found no authority that adopts the construction urged by plaintiffs.

*Owens v Garfield,* 784 P2d 1187 (Utah, 1989), involved a child injured by a baby-sitter who was operating an unlicensed daycare center. Before the child was injured, the state had investigated the baby-sitter. The injured child's parents claimed that the government agencies breached their duties by failing to attempt to prevent the sitter from baby-sitting and by failing to warn the parents of children in her care. *Id.* at 1189. The Utah Supreme Court affirmed the dismissal of the gov-

---

[2] See, generally, anno: *Validity, construction, and application of state statute requiring doctor or other person to report child abuse,* 73 ALR4th 782.

ernment agencies on the ground that they owed no legal duty to the plaintiff. *Id.* The existence of Utah's child abuse reporting statute did not create such a duty:

> Although the statute is intended to address the problem of child abuse, we are not persuaded that it can be read to create a legally enforceable duty on the part of the [Division of Family Services] to protect all children from child abuse in all circumstances. Such a duty would be impossible to perform. The statute sets up procedures to be followed by the DFS employees when they are alerted of suspected abuse of identified children, but *it does not create a duty on the part of the DFS to protect children who are never identified as being in need of protection.* [*Id.* at 1191. Emphasis added.]

In *Thelma D v St Louis Bd of Ed,* 669 F Supp 947 (ED Mo, 1987), six public school students sued a teacher who had sexually abused them. Invoking provisions of Missouri's child abuse reporting statute, they also sued another teacher who knew about, but failed to report, the alleged abuse. *Id.* at 950. The district court dismissed the plaintiffs' 42 USC 1983 claim because it found "neither a statutory nor a common law duty to report or prevent" the alleged abuse. *Id.*

Michigan's child abuse reporting statute creates a private right of action *only* in an identified abused child. A statute must be construed to effectuate the legislative purpose. *Williams v Coleman,* 194 Mich App 606, 612; 488 NW2d 464 (1992). The statute plainly confines the reporting requirement to the suspected abuse of a particular child:

> The written report shall contain the name of *the child* and a description of the abuse or neglect. If possible, the report shall contain the names and addresses of *the child's* parents, *the child's* guard-

ian, the persons with whom the child resides, and *the child's* age. [MCL 722.623(2); MSA 25.248(3)(2). Emphasis added.]

Further, the statute authorizes liability only for "damages proximately caused by the failure [to report abuse]." MCL 722.633(1); MSA 25.248(13)(1). If the defendant's failure to make the required report was not the proximate cause of the plaintiff's injury, then MCL 722.633(1); MSA 25.248(13) (1) cannot be applicable.

Proximate cause "can be thought of as a policy determination which is often indistinguishable from the duty question." *McMillan v Hwy Comm,* 426 Mich 46, 51; 393 NW2d 332 (1986), citing *Moning v Alfono,* 400 Mich 425, 438; 254 NW2d 759 (1977); *Balcer v Forbes,* 188 Mich App 509, 511; 470 NW2d 453 (1991). If the facts bearing on proximate cause are not in dispute, and if reasonable minds could not differ, then the issue is one of the law for the court. *Charles Reinhart Co v Winiemko,* 196 Mich App 110, 113; 492 NW2d 505 (1992). See also *Borne v Northwest Allen Co School Corp,* 532 NE2d 1196, 1203 (Ind App, 1989) (failure to report child abuse "would not in the direct sense be a proximate cause of the injury to the child").

An element in the link between Bathani's alleged failure to report the prior abuse and the child's injuries is missing. Even if Bathani had reported the earlier alleged incident, Andrew would not necessarily have been protected from Lux. The Child Protection Act assures that reports "filed with the department pursuant to this act shall be confidential." MCL 733.627(1); MSA 25.248(7)(1). See also OAG, 1977-1978, No 5297, p 430 (April 28, 1978) (all reports to central registry are confidential). The statute names twelve agencies or groups of individuals to whom reports may

be released.[3] The plaintiffs do not fall into any of these categories. Bathani's report would not have been available to warn plaintiffs of the threat Lux allegedly posed. Even if Lux was a licensed child care provider, pursuant to MCL 722.111 *et seq.*; MSA 25.358 *et seq.*, and her license had been revoked, MCL 722.121(2); MSA 25.358(21)(2), plaintiffs wholly failed to plead facts that, if proved, would establish that Andrew's injuries could have been avoided.[4] Plaintiffs' statutory claim was properly dismissed.

## II. COMMON-LAW DUTY

Plaintiffs next contend that Bathani had a common-law duty to them. Michigan does not recognize any such common-law duty.

> Duty is actually a " 'question of whether the defendant is under any obligation for the benefit of the particular plaintiff' and concerns 'the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981); Prosser & Keeton, Torts (5th ed), § 63, p 356. " 'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Id.,* p 358. See also *Friedman v Dozorc, supra,* and *Antcliff v State Employees Credit Union,* 414 Mich 624, 631; 327 NW2d 814 (1982). [*Buczkowski v*

---

[3] A child protective agency; a law enforcement agency; physicians treating the child; "a person legally authorized to place a child in protective custody"; a person or agency responsible for the child's health or welfare; a person named in the report; a court; a grand jury; a research project; the child's attorney; an adoption agency; and staff of the juvenile court. It is self-evident that "the child" referred to is the allegedly abused child, not "any child" in Michigan.

[4] For example, no statutory provision requires notification of license revocation to the clients of a daycare provider or to the general public.

*McKay,* 441 Mich 96, 100-101; 490 NW2d 330 (1992).]

Generally, an individual has no duty to protect another who is endangered by a third person's conduct. *Harrison v Director of Dep't of Corrections,* 194 Mich App 446, 456; 487 NW2d 799 (1992). The duty to protect others against harm from third persons is based on a relationship between the parties. *Buczkowski, supra* at 103-104, citing Prosser & Keeton, *supra* at 385. A duty of reasonable care may arise where one stands in a special relationship with either the victim or the person causing the injury. *Harrison, supra* at 456. The requisite special relationship must exist between the defendants and the victims or the defendants and the third parties. *Massey v Dep't of Corrections,* 182 Mich App 238, 241; 451 NW2d 869 (1990).

No Michigan cases define a test to set forth the requirements of a special relationship. *Harrison, supra* at 457. "Special relationships" recognized under Michigan law include landlord-tenant, proprietor-patron, employer-employee, residential invitor-invitee, psychiatrist-patient, and doctor-patient. *Bell & Hudson, PC v Buhl Realty Co,* 185 Mich App 714, 717-718; 462 NW2d 851 (1990). Other generally recognized "special relationships" include common carrier-passenger and innkeeper-guest. *Dykema v Gus Macker Enterprises, Inc,* 196 Mich App 6, 8; 492 NW2d 472 (1992).

> *The rationale behind imposing a duty to protect in these special relationships is based on control.* In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety. [*Williams v Cunningham Drug Stores, Inc,* 429

Mich 495, 499; 418 NW2d 381 (1988). Emphasis supplied.][5]

The court will impose a "special relationship" duty only where a person's actions directly influence another. Michigan courts have defined as third parties only "those persons readily identifiable as foreseeably endangered." *Davis v Lhim,* 124 Mich App 291, 303; 335 NW2d 481 (1983), rev'd on other grounds sub nom *Canon v Thumudo,* 430 Mich 326; 422 NW2d 688 (1988). See also *Jackson v New Center Comm Mental Health Services,* 158 Mich App 25, 36; 404 NW2d 688 (1987) (psychiatrist owed no duty to unidentifiable plaintiffs who were "hapless victims of random shooting spree"); *Owens, supra* at 1191 (statute did not create duty to protect children who are never identified as being in need of protection).

Plaintiffs did not allege that Dr. Bathani had any direct control over either Lux or Andrew. On the pleadings before the court, Bathani was neither Lux's physician nor Andrew's. We decline to extend to physicians a common-law duty to warn unidentified persons who are not patients but who are potential victims concerning their suspicions of child abuse. Indeed, the recognition of such a broad duty would run afoul of our notions of privacy in the physician-patient relationship.

> [T]he duty question turns on policy considerations: "whether one owes a duty of protection to another is ultimately a question of fairness." . . .

---

[5] A duty may also arise out of a

> special circumstance where the defendant had knowledge of the assailant's dangerous propensities or control of the premises . . . where the custodial circumstances involved imposed a duty to protect the individual against his own propensities . . . [or a] products liability claim where an innocent bystander was injured by a defective product. [*Buczkowsi, supra* at 104, n 9.]

The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. [*Buczkowski, supra* at 101-102, n 5, citing *Samsom v Saginaw Professional Bldg, Inc,* 393 Mich 393, 419-420; 224 NW2d 843 (1975) (LEVIN, J., dissenting).]

Although, the Child Protection Law abrogates all legally recognized privileges, except attorney-client, for purposes of reports required to be made, MCL 722.631; MSA 25.248(11); *People v Caviani,* 172 Mich App 706; 432 NW2d 409 (1988), imposition of a common-law duty would infringe on recognized privileges that have not been so abrogated.

After "weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution," we conclude as a matter of law that the proposed duty should not be imposed. Summary disposition was properly granted.

Affirmed.

GRIFFIN, P.J., concurred.

NEFF, J. I concur in the result only.