OPINION OF THE COURT
Phillip R. Rumsey, J.
This action to recover for damages resulting from a sexual encounter that occurred during a summer theater program in 1999, between the plaintiff Michael F. (who was, at the time, 16 years of age) and defendant Kenneth Olsson (an adult), and related events, was commenced in June 2001. In addition to seeking monetary compensation from Olsson for the harm caused by his criminal conduct,[1] plaintiffs also charge defendants Andrew Beck (Michael F.’s school music teacher in whom he confided, during school hours, several months after the incident), the Superintendent of the Johnson City School District, and the District Board of Education (Beck’s employers) with breach of their statutory duty to report the abuse upon learning of it (see, Social Services Law §§ 413, 420.)[2] Beck, the Superintendent, and the District (hereinafter defendants) move for dismissal of the complaint, on the ground that it fails to state a cause of action against them, or, alternatively, summary judgment.
Defendants contend that dismissal of Mrs. F.’s own claim against them is warranted, on the ground that they owe no legal duty to her, as the parent of an abused student, which could give rise to liability for failure to report known or suspected abuse. Plaintiffs disagree, pointing to the statutory language imposing civil liability upon one who knowingly fails to report suspected child abuse “for the damages proximately caused by such failure” (Social Services Law § 420 [2]), and *644 arguing that it was foreseeable that Mrs. F. would suffer emotional trauma when she learned that defendants had known of the abuse, but failed to report it. It appears that this may be an issue of first impression in New York; indeed, the court is unaware of any other case, in any jurisdiction, involving a parent’s own civil claim for damages resulting from the failure to report the abuse of his or her child.
As noted by another court, faced with a case involving almost identical statutory language creating a civil right of action for failure to report suspected abuse, “[n]othing in the [statute] modifies the plaintiffs’ burden to prove the existence of a legal duty” running to them (Marcelletti v Bathani, 198 Mich App 655, 659, 500 NW2d 124, 127), as a prerequisite to recovery. The scope of the duty created by a statute must be ascertained by reference to the legislative intent, which may, in turn, be revealed by the language of the statute, its legislative history, and other relevant factors. In the Marcelletti case, the court concluded that the duty imposed by the Michigan reporting statute does not give rise to a cause of action on behalf of a child subsequently harmed by a babysitter, whose prior abuse of another child had not been reported by the defendant. Considering the statute’s reference to, and focus on, an “identified abused child,” the Michigan court found that to allow recovery by others “would extend the civil liability beyond that intended by the Legislature” (id. at 660, at 127).
Similar considerations compel a similar result here. Review of the entire statutory framework (which has much in common with the Michigan law before the court in Marcelletti), together with the relevant legislative history (see, Bill Jacket, L 1973, ch 1039), reveals that the New York Legislature’s overriding concern was for the protection of the abused child, and the provision of appropriate services to identified perpetrators, again, with the aim of preventing further harm to children. While it is certainly foreseeable that an abused child’s parent would be upset or traumatized upon learning that a report of that abuse was not made when it could have been, foreseeability alone does not create a legal duty where none would otherwise exist (see, Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232; Pulka v Edelman, 40 NY2d 781, 785).
Moreover, there is nothing in the terms of the reporting statute, or its legislative history, that evinces a clear intent, on the part of the Legislature, to create an exception to the general rule that one individual — even a close family member — may not recover for “emotional distress” flowing merely from an *645 awareness that harm has come to another (see, Kennedy v McKesson Co., 58 NY2d 500, 506; Tobin v Grossman, 24 NY2d 609, 611). A statute should not be construed as effecting a substantial change in the common law, particularly one which affects rules of liability, unless the intention to make such a change is “expressed with the clearness which the importance of the subject demands, or so that its meaning is unmistakable” (Seligman v Friedlander, 199 NY 373, 376). No such intention is manifest here.
Mrs. F. alleges that defendants’ failure to report the abuse of her son “prevented [her] from being able to take protective measures to safeguard her son from [Olsson’s] continued harassment” for approximately six months, until she learned of the incident from another source, and that she herself “suffered grievous emotional, mental and physical pain and suffering” as a result. There is no indication, however, in her deposition testimony or affidavit in opposition to the present motion, that she sustained any actual physical injury; her own injuries were not discussed in the deposition, and her recent affidavit refers only to her continued need for counseling “to deal with the trauma” associated with defendants’ alleged wrongdoing (Affidavit of Lurene F., dated Nov. 16, 2001, 12). Thus, her claim essentially amounts to one for her own emotional injury, stemming from having learned, after the fact, of the harm inflicted on her son by Olsson (both in the initial incident of abuse, and as a result of ongoing harassment or other contact between Michael and his abuser, which might arguably have been prevented if Beck had reported the initial incident upon learning of it). Other than that harm, the only other injury that might arguably be encompassed by such allegations would be that accruing to Michael, as a result of his mother’s inability to take action to “safeguard” him from further contact. Thus, it is clear that Mrs. F. would have no right, under the common law, to recover for the emotional distress she suffered as a result of defendants’ purported negligence (see also, Cavello v Sherburne-Earlville Cent. School Dist., 110 AD2d 253, 255 [parents have no cause of action for their own emotional distress, allegedly caused by District’s negligent supervision of other students, resulting in severe harassment of their children]).
The mere provision of a civil remedy for “damages proximately caused” by a failure to comply with mandatory reporting statutes does not, in this court’s view, signal an intention by the Legislature to impose liability for harm suffered by *646 individuals other than the subject child, or to abrogate the common-law rules limiting the scope of liability for purely emotional or psychological harm. Therefore, the claims asserted by Lufene F., on her own behalf, must be dismissed.
As for Michael F.’s claims, while issue has not yet been joined by service of an answer, the present motion (denominated one for “[d]ismissal * * * pursuant to CPLR § 3211 [a] [7] and/or CPLR § 3212”) has been treated by both parties as one for summary judgment, as evidenced by the submission of testimony and affidavits both in support of, and in opposition to, the relief sought. Accordingly, the court shall analyze the issues presented in that context.
Defendants’ bid for summary dismissal is premised upon the assertion that the injuries for which Michael seeks to recover resulted, not from Beck’s failure to report the abuse when he was told of it in November 1999, but from the abuse itself, which occurred five months earlier. Because there was no further physical contact between Michael and his abuser after Beck was told of their prior sexual encounter, defendants argue, the teacher’s failure to report that encounter could not have been the proximate cause of Michael’s injuries. In support of this position, defendants point to testimony tending to show that Michael’s stress and possibly resultant development of mononucleosis were prompted by his mother’s discovery of the abusive incident with Olsson and the ensuing police involvement, or by confusion about his own sexual identity, all of which, they posit, were consequences of the actual abuse in June 1999, or of Mrs. F.’s discovery of that abuse almost a year later (some six or seven months after Beck became aware of it). Defendants contend that there is no proof of any actual harm having come to Michael as a result of Beck’s failure to report the abuse in November 1999. In addition, defendants note that plaintiif has submitted no expert proof substantiating his claims of physical or psychological injury.
It is, however, undisputed that between November 1999 and June 2000, Olsson continued to be present, as an accompanist, at musical events in which Michael performed at the high school. During this period, Beck asked Michael if he wanted Beck to arrange for another accompanist, but Michael — who, in his words, was trying to “just be professional about it,” and “didn’t want to create a problem” — said no, despite the fact that he was “relatively uncomfortable with [Olsson] there,” and “very, very nervous * * * about being alone with [him]” (Deposition of Michael F. at 47-49). And, while Michael had *647 initially ceased communicating with Olsson after discussing the matter with Beck, he resumed contact via e-mail and “instant messaging” in January or February 2000, which eventually led to his receipt of sexually-oriented e-mail communications from Olsson which Michael characterized as “getting to the point of harassment,” wherein Olsson was “coming on to [him],” leaving him feeling “a little threatened” (id. at 45-46).
Although Michael was not physically abused by Olsson after the initial incident in June 1999, it could reasonably be inferred that Beck’s failure to report the incident immediately upon learning of it in November 1999 allowed continuing contact between Michael and his abuser, both in person and by electronic means, which involved unwelcome sexual advances, and escalated to the point of harassment and threats, causing Michael ongoing discomfort and anxiety. Defendants have proffered no expert testimony, or other evidence, which, if unrefuted, would establish that this continuing contact with Olsson did not cause Michael to suffer additional psychological or emotional injury, beyond that which resulted from the initial physical contact. Accordingly, bearing in mind that defendants, as movants, bear the initial burden on this motion, the court is not convinced that they are entitled to the relief sought.
Defendants’ motion is granted only to the extent that the fourth cause of action (that asserted by Lurene F. against the moving defendants) is dismissed, and otherwise denied.

. Olsson was later convicted upon his plea of guilty to a felony charge of sodomy in the third degree, and sentenced accordingly.

. Social Services Law § 420 (2) provides that: “Any person, official or institution required by this title to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure,” and section 413 (1) lists school officials including teachers (see, Kimberly S.M. v Bradford Cent. School Dist., 226 AD2d 85, 88), within the list of persons required to report suspected abuse or maltreatment of a child, “when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child.”