*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JARROD WATSON and LINDA WATSON,
Individually and as Next Friends of AW,

       Plaintiffs-Appellants,

v

OXFORD COMMUNITY SCHOOLS, TIMOTHY
THRONE, STEVEN WOLF, NICHOLAS EJAK,
PAM PARKER FINE, SHAWN HOPKINS, and
KIMBERLY POTTS,

       Defendants-Appellees,

and

JOHN DOE, JENNIFER CRUMBLEY, and JAMES
CRUMBLEY,

       Defendants.

UNPUBLISHED
September 19, 2024

No. 365425
Oakland Circuit Court
LC No. 2022-195663-NO

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this tort action arising out of the Oxford High School shooting, plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendants.[1] Finding no errors warranting reversal, we affirm.

---

[1] We use the term "defendants" to refer only to defendants Oxford Community Schools ("OCS"), Timothy Throne, Steven Wolf, Nicholas Ejak, Pam Parker Fine, Shawn Hopkins, and Kimberly Potts; because John Doe, Jennifer Crumbley, and James Crumbley (the "Crumbleys") are not

-1-

# I. BASIC FACTS AND PROCEDURAL HISTORY

This case arose from the school shooting that occurred at Oxford High School on November 30, 2021, when EC shot and killed four students and physically injured seven others, which included AW, who was shot in the leg but survived. The extensive facts detailing the events leading up to and including the shooting are detailed in this Court's opinion in *People v Crumbley*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 362210 and 362211); slip op at 2-11.

Plaintiffs sued in August 2022, initially alleging the individual Oxford defendants were negligent or grossly negligent, depending on whether the trial court applied the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., to the case. Plaintiffs accused defendants Steven Wolf and Timothy Throne of covering up and downplaying legitimate threats of violence, which resulted in AW going to school when he should have been safe at home. According to plaintiffs, defendants Nicholas Ejak and Shawn Hopkins acted unreasonably when, despite a veritable parade of red flags, they decided to allow EC to remain in school without any precautions. Ejak and Hopkins did not search EC's backpack or locker, did not ask EC or Jennifer and James whether EC had access to a gun, and did not force Jennifer and James to remove EC from school. Plaintiffs contended this was gross negligence and the proximate cause of AW's and his parents' injuries, which included medical costs and significant psychological harm. Plaintiffs also asserted the individual Oxford defendants violated the Child Protection Law ("CPL"), MCL 722.621 *et seq*., by failing to report suspected abuse or neglect of EC to Children's Protective Services ("CPS"). While each of the individual Oxford defendants had different levels of knowledge of EC's situation, they each knew enough to be required to report Jennifer and James to CPS, and their failure to do so was actionable under the CPL.

In lieu of responding to the complaint, defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8). Defendants argued that under the GTLA, plaintiffs were required to plead and prove that the individual Oxford defendants were grossly negligent and *the* proximate cause of plaintiffs' injuries. However, defendants argued there could be no legitimate dispute that EC was the proximate cause of plaintiffs' injuries, not the individual Oxford defendants. Therefore, summary disposition of all of the claims against the individual Oxford defendants was warranted under (C)(7).

The trial court agreed with defendants in a written opinion and order. The court determined a tort claim against OCS was barred unless plaintiffs pleaded a claim in avoidance of governmental immunity, which they did not do because they failed to identify any exceptions codified in the GTLA. Thus, the trial court granted summary disposition in favor of OCS under subrule (C)(8).

---

parties to this appeal. As a result, their involvement in this case will only be discussed to the extent it is relevant for a proper understanding of the facts. Notably, plaintiffs' complaint uses the term "John Doe" when referring to EC, the minor who committed the school shooting. For the sake of clarity, we will reference EC when discussing the shooter, instead of Doe. Further, "the individual Oxford defendants" will refer to the people who were employed by OCS at the relevant time. In other words, "the individual Oxford defendants" will refer to all defendants involved in this appeal except OCS.

Next, the trial court addressed the claims against the individual Oxford defendants. The trial court determined no reasonable juror could conclude the proximate cause of plaintiffs' injuries was anyone other than EC. Therefore, plaintiffs' claims against the individual Oxford defendants were barred by governmental immunity, even if, as alleged, the individual Oxford defendants were grossly negligent. Further, the trial court stated it was bound by an opinion of this Court applying governmental immunity to the CPL, which meant those claims also were barred. For these reasons, the trial court granted defendants' motion for summary disposition as to the individual Oxford defendants under subrule (C)(7), and this appeal followed.

## II. STANDARDS OF REVIEW

As relevant here,[2] the trial court considered and granted defendants' motion for summary disposition under MCR 2.116(C)(7). "We review de novo a circuit court's summary disposition decision." *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361397); slip op at 24 (quotation marks and citation omitted). "Under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 414; 875 NW2d 242 (2015) (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

"The application of governmental immunity is a question of law subject to de novo review." *Yoches v City of Dearborn*, 320 Mich App 461, 469; 904 NW2d 887 (2017). "Questions of statutory interpretation are reviewed de novo . . . ." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 422; 997 NW2d 481 (2022) (citations omitted).

## III. IMMUNITY FOR THE INDIVIDUAL OXFORD DEFENDANTS

Plaintiffs argue the trial court erred when it granted defendants' motion for summary disposition because EC should not have been considered the proximate cause of plaintiffs' injuries. We disagree.

"The purpose of the GTLA is to limit governmental tort liability." *Farris v McKaig*, 324 Mich App 349, 353; 920 NW2d 377 (2018). As relevant here, "MCL 691.1407(2) provides immunity for government employees[.]" *Wood v Detroit*, 323 Mich App 416, 423; 917 NW2d 709 (2018). Under the state's governmental immunity, "governmental employees are generally immune from tort liability when they are engaged in the exercise or discharge of a governmental

---

[2] Plaintiffs have not challenged the trial court's order granting summary disposition in favor of OCS. Consequently, we need only address the trial court's order as it pertains to the individual Oxford defendants.

function." *Dougherty v City of Detroit*, 340 Mich App 339, 345; 986 NW2d 467 (2021) (quotation marks and citation omitted).  MCL 691.1407(2) states:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
>> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>>
>> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>>
>> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is *the proximate cause* of the injury or damage.  [Emphasis added.]

The dispute in the trial court and on appeal relates solely to MCL 691.1407(2)(c), as the trial court decided the motion for summary disposition after determining no reasonable juror could conclude the individual Oxford defendants were "the proximate cause of" plaintiffs' injuries.  *Id*.

Plaintiffs argue the trial court's decision was incorrect because it failed to account for the Michigan Supreme Court's decision in *Ray v Swager*, 501 Mich 52; 903 NW2d 366 (2017), that only negligent parties—not individuals acting with specific intent—can be considered the proximate cause of injuries under MCL 691.1407(2)(c).  "[P]roximate cause considers whether the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Nathan v David Leader Mgmt*, 342 Mich App 507, 522-523; 995 NW2d 567 (2022).  In other words, a decision regarding proximate cause "requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim." *Ray*, 501 Mich at 65. "[S]o long as the defendant is a factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was the proximate cause." *Dougherty*, 340 Mich App at 353 (quotation marks and citation omitted; alteration in original).

"It is not uncommon that more than one proximate cause contributes to an injury." *Ray*, 501 Mich at 65.  "However, under the GTLA, we have held that when assessing whether a governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was 'the one most immediate, efficient, and direct cause of the injury . . . .' " *Id*., quoting *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000).  "Determining proximate cause under the GTLA, or elsewhere, does not entail the weighing of factual causes but instead assesses the legal responsibility of the actors involved."

*Ray*, 501 Mich at 71-72. However, "one's conduct cannot be the proximate cause without also being a factual cause." *Id*. at 73. "[S]o long as the defendant is a factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was the proximate cause." *Id*. at 74. "This would require considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries." *Id*. at 76 (quotation marks and citation omitted).

For purposes of this appeal, the parties do not dispute the individual Oxford defendants are factual causes of plaintiffs' injuries. Instead, the dispute focuses on whether the individual Oxford defendants were *the* proximate cause of plaintiffs' injuries. Plaintiffs argue EC should not be considered a proximate cause when considering who was the proximate cause under the standard clarified in *Ray*, citing the following language from the Court's opinion: "Further, before an actor can be a proximate cause, there must be the prerequisite determination that the actor was negligent—that is, that the actor breached a duty." *Id*. at 74. Read in a vacuum, this statement would seem to support plaintiffs' argument because EC was not negligent; he acted intentionally and with malice.

But in the context of the case, the statement is clearly obiter dictum.[3] The Court in *Ray*, 501 Mich at 59-60, was solely considering allegedly negligent parties. There was no claim that anyone purportedly liable for the injuries in *Ray* acted intentionally. *Id*. Simply stated, the *Ray* Court was not being asked to decide if an intentional actor could qualify as the proximate cause of injuries. *Id*. Indeed, the Court in *Ray* affirmed its previous decision in *Robinson*, which held the proximate cause of the injuries in that case was not the governmental actor's alleged gross negligence, but "the reckless conduct of the drivers of the fleeing vehicles." *Robinson*, 462 Mich at 462. In other words, the Court concluded reckless actions can be considered the proximate cause of an injury, not just negligent actions. *Id*. Moreover, when analyzing *Ray* in a published opinion, this Court stated the relevant holding was to compare all "factual causes," not just negligent factual causes. *Dougherty*, 340 Mich App at 353. The crux of *Ray* was that the GTLA requires courts to consider who is *the* proximate cause from the group of human actors considered to be a proximate cause. Therefore, contrary to plaintiffs' argument, EC is properly considered a proximate cause of plaintiffs' injuries in this case. *Dougherty*, 340 Mich App at 353.

Plaintiffs do not attempt to claim any of the individual Oxford defendants could be considered the proximate cause of plaintiffs' injuries when compared to EC. Nor would it be possible to do so. The individual Oxford defendants had varying knowledge about EC. From the record below, it is unclear whether Wolf and Throne had any direct knowledge about EC's state of mind on the day of the shooting. Instead, plaintiffs alleged Wolf and Throne suppressed information about legitimate threats, which meant school was not closed to protect AW from the shooting. Defendant Pam Parker Fine knew about EC looking at bullets on his cell phone and Jacquelyn Kubina and Allison Karpinski, EC's teachers, believed EC's previous schoolwork

---

[3] "Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." *Secura Ins Co v Stamp*, 341 Mich App 574, 585 n 9; 991 NW2d 244 (2022).

exhibited a tendency toward violent behavior. Ejak and Hopkins had the most knowledge of the individual Oxford defendants. They knew everything Fine knew, plus they were present on the day of the shooting when EC's drawings were shown to them. Ejak and Hopkins observed the meeting between EC and Jennifer and James, which included Jennifer and James effectively ignoring EC's mental-health issues. Further, EC's drawings were either a clear and definite cry for help, or a threat of imminent violence against others. Despite this knowledge, Ejak and Hopkins allowed EC to leave the office without searching EC, asking him if he had access to a weapon, searching EC's locker, or asking Jennifer and James if EC had access to a weapon. Lastly, while the record does not contain any indication defendant Kimberly Potts had knowledge about EC's actions or state of mind, plaintiffs pleaded she had an opportunity to stop EC shortly after he began the school shooting. Jennifer and James had all of that same knowledge, plus additional information about EC's mental-health issues, that they recently purchased a gun for him, and the guns were not safely stored.

Ultimately, though, EC was the person who decided to take a gun to school, shoot AW in the leg and cause associated harm to Linda and Jarrod. Indeed, while sworn under oath, EC admitted he made the decision to conduct the school shooting and shot AW with the intent to kill him. While the individual Oxford defendants had some signs EC might be a danger to himself or others, and Jennifer and James had even more signs, it is simply outside the realm of possibility that a reasonable juror could conclude anyone but EC was "the one most immediate, efficient, and direct cause, of the [plaintiffs'] injuries." *Robinson*, 462 Mich at 446. Because the trial court properly determined no reasonable juror could conclude anyone but EC was the proximate cause of plaintiffs' injuries, summary disposition in favor of the individual Oxford defendants was properly granted.[4] *Id.*; *Robinson*, 462 Mich at 446.

Plaintiffs also alternatively argue that the Michigan Supreme Court's decision in *Ray* was wrongly decided and should be overruled. As plaintiffs openly admit, we have no authority to review or change a decision of the Supreme Court. "[T]he Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded . . . ." *Estate of Pearce v Eaton Co Rd Comm*, 507 Mich 183, 195; 968 NW2d 323 (2021) (quotation marks and citation omitted). *Robinson* has not been overruled or superseded. Therefore, plaintiffs' argument must fail because we are bound by *Robinson* and have no authority to review it. *Estate of Pearce*, 507 Mich at 195.

## IV. THE CHILD PROTECTION LAW

---

[4] As an alternative ground for affirmance, defendants claim the doctrine of crossover estoppel applies in this case and bars any court from concluding anyone other than EC was the proximate cause of plaintiffs' injuries. We decline to consider this argument because it is moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted) (holding that a case is moot when "[i]t involves a case in which a judgment cannot have any practical legal effect upon a then existing controversy," and that, "[a]s a general rule, this Court will not entertain moot issues or decide moot cases").

Plaintiffs also argue that the trial court erred by applying governmental immunity to a claim under the CPL, warranting reversal of the trial court's order granting summary disposition in favor of defendants as to those claims. We disagree.

"The CPL deals with cases of neglect or abuse." *In re CADP*, 341 Mich App 370, 394; 990 NW2d 386 (2022). More specifically, "the purpose of the [CPL] is to protect abused and neglected children." *Becker-Witt v Bd of Examiners of Social Workers*, 256 Mich App 359, 364; 663 NW2d 514 (2003). Under MCL 722.623(1)(a), a "school administrator, school counselor or teacher" is "required to report . . . child abuse or child neglect" to "centralized intake by telephone, or, if available, through the online reporting system," when they have "reasonable cause to suspect child abuse or child neglect . . . ." The CPL discusses criminal liability, civil liability, and immunity with respect to mandated reporters:

> (1) a person who knowingly fails to report when required to do so incurs criminal liability; (2) a person who fails to report when required to do so incurs civil liability; (3) a person who reports in good faith is immune from any civil or criminal liability that might otherwise be incurred as a result of that action. [*Lee v Detroit Med Ctr*, 285 Mich App 51, 63-64; 775 NW2d 326 (2009).]

For purposes of this appeal, it is not disputed that all of the individual Oxford defendants are mandated reporters under MCL 722.623(1)(a), and that there were no reports made under the statute. Defendants' arguments do not focus on whether there was suspected neglect or abuse of EC, but instead focus on whether they are entitled to immunity under the GTLA regardless of whether they may have violated MCL 722.623(1)(a). This dispute centers on this Court's decision in *Jones v Bitner*, 300 Mich App 65, 68; 832 NW2d 426 (2013), in which this Court considered whether the CPL "abrogate[d] the governmental immunity statute" with respect to mandatory reporters. The case dealt with a lawsuit against the defendant, a police officer, who was a mandated reporter. *Id*. at 73. The defendant was accused of violating the CPL after a minor child died by consuming morphine kept in the home by the child's mother. *Id*. at 68-69. The plaintiff, the representative of the decedent's estate, sued the defendant because the defendant had become aware the child's mother kept morphine in her home with the decedent but did not report the alleged abuse or neglect as required under the CPL. *Id*. at 68-70.

On appeal, this Court considered whether the GTLA provided immunity to the defendant under the circumstances. *Id*. at 68. "We conclude that the mandatory reporting provision of the [CPL], MCL 722.623, does not abrogate the governmental immunity statute, MCL 691.1407. While the mandatory reporting provision imposes liability when an individual named in the statute fails to report suspected abuse or neglect, that liability is limited by governmental immunity." *Jones*, 300 Mich App at 68. When analyzing why, we noted the Legislature amended the CPL several times after the GTLA was amended to provide immunity to individual governmental actors, yet never added a provision "to clearly provide that it abrogates the later-enacted governmental immunity statute." *Id*. at 77. Given this decision by the Legislature, we stated that "[t]he mandatory reporting statute must be read in conjunction with, and is therefore limited by, the governmental immunity statute." *Id*. "It follows that, in order for [the] defendant to be liable under the mandatory reporting statute, her conduct must have been grossly negligent and *the* proximate cause of [the decedent]'s death." *Id*.

On the basis of *Jones*, 300 Mich App at 77, the trial court correctly determined the individual Oxford defendants were entitled to governmental immunity under the GTLA. Under MCR 7.215(C)(2), we are bound by that decision. As a result, the *Jones* decision remains good law and is binding on us. Further, as explained in greater depth above, plaintiffs' claims against the individual Oxford defendants fail because no reasonable juror could conclude they were *the* proximate cause of plaintiffs' injuries. MCL 691.1407. Consequently, the individual Oxford defendants are immune from plaintiffs' claims under the CPL because of immunity granted to them by law under the GTLA.

In an attempt to escape this conclusion, plaintiffs urge this Court to revisit *Jones*. Plaintiffs contend the *Jones* Court ignored relevant caselaw from our Supreme Court and misapplied the rules of statutory construction. Regardless of plaintiffs' beliefs, the *Jones* Court specifically indicated it was considering and applying the plain language of the two statutory schemes, primarily relying on the lack of an exception to the GTLA in the CPL. *Jones*, 300 Mich App at 76-77 ("The Legislature is presumed to be aware of the consequences of its use or omission of statutory language and the effect of new laws on all existing laws."). This was important because, while the Legislature is allowed to pass other exceptions to the GTLA, like it did in the Civil Rights Act ("CRA"), MCL 37.2101 *et seq.*, it did not do so in the CPL. See *In re Bradley Estate*, 494 Mich 367, 393 n 60; 835 NW2d 545 (2013) (holding the Legislature "expressly waiv[ed] governmental immunity" in the CRA). Because of the lack of a similar express waiver of immunity in the CPL, this Court properly constructed the statutory scheme to be limited by the GTLA. *Id*.

Moreover, even if we did believe *Jones* was wrongly decided, this would not be the appropriate case to address it. As noted by defendants, although for the first time on appeal, the CPL civil-liability provision does not provide any avenue of relief to plaintiffs on the basis of other binding caselaw. Pertinently, in *Marcelletti v Bathani*, 198 Mich App 655, 659; 500 NW2d 124 (1993), this Court held "the Legislature intended that liability under the statute be limited to claims for damages by the identified abused child about whom no report was made[.]" In other words, civil liability under MCL 722.633(1) is only available to the child who had been abused or neglected, not other people harmed by that child. With respect to this case, only EC would have a potential claim against the individual Oxford defendants under the CPL, but he is not a plaintiff in this case. *Marcelletti*, 198 Mich App at 659. Therefore, even if we thought *Jones* was wrongly decided, this would not be the proper case to revisit it because plaintiffs' claims against the individual Oxford defendants under the CPL would fail anyway in light of this Court's binding decision in *Marcelletti*. As a result, summary disposition would still be warranted under *Marcelletti* even if a conflict panel eventually set aside *Jones*. Consequently, we decline to do so.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-8-