STATE OF MICHIGAN
COURT OF APPEALS

BRENDAN BOMAN,

Plaintiff-Appellant,

v

CATHOLIC DIOCESE OF GRAND RAPIDS,
doing business as GRAND RAPIDS
SECONDARY SCHOOL, TOM MAJ, GREG
DEJA, and KYLE SHELTON,

Defendants-Appellees,

and

ABIGAIL SIMON,

Defendant.

UNPUBLISHED
June 26, 2018

No. 338458
Kent Circuit Court
LC No. 15-010779-NO

Before: MURRAY, C.J., and HOEKSTRA and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the trial court's opinion and order granting the motion for summary disposition filed by defendants[2] the Catholic Diocese of Grand Rapids, doing business as Grand Rapids Catholic Secondary School, Tom Maj, Greg Deja, and Kyle Shelton. For the reasons stated herein, we affirm.

I. MATERIAL FACTS AND PROCEEDINGS

The Diocese operates Catholic Central High School and West Catholic High School in Grand Rapids. After she interviewed with Maj, the former president of Grand Rapids Catholic

---

[1] *Boman v Catholic Diocese of Grand Rapids*, unpublished order of the Court of Appeals, entered November 1, 2017 (Docket No. 338458).

[2] Abigail Simon was dismissed from the lower court action without prejudice and is not a party to this appeal.

Secondary Schools, the Diocese hired Abigail Simon to work at both schools as a tutor and academic advisor for the 2012-2013 school year.[3] Plaintiff, a 15-year-old at the time, was one of the Catholic Central students she tutored. In February 2013, plaintiff and Simon began a sexual relationship, which included trips outside the state of Michigan.

On April 25, 2013, plaintiff's mother discovered explicit photographs of Simon on plaintiff's cell phone. She immediately showed the phone to Joel Passinault, a Catholic Central employee and family friend. Passinault, in turn, contacted the Diocese, which itself reported the abuse to law enforcement. The next day, the Diocese terminated Simon's employment, and she was ultimately convicted of three counts of first-degree criminal sexual conduct and one count of accosting a child for immoral purposes.

The record demonstrates that Diocese employees had various concerns about Simon's behavior throughout the 2012-2013 school year. Cynthia Kneibel, the principal at West Catholic,[4] testified at Simon's criminal trial that Simon, who monitored study hall at the school, had classroom management and personal space issues with male students. Tony Fischer, dean of students at West Catholic, noticed similar behavior. Specifically, Fischer testified at his deposition that students "would get too close to her personal space[.]" Finally, Christopher Abid, an assistant football coach and associate athletic director at West Catholic during the 2012-2013 school year, testified that Simon acted too friendly toward male students, and that he believed he would have been fired if he acted the same way toward female students.

The concerns by faculty members at West Catholic intensified in February 2013, when Abid, Fischer, and Kneibel all noticed Simon failing to respect personal space boundaries and sitting alone with a male student at the school's Ash Wednesday mass. In response to the behavior, Abid spoke with the West Catholic student involved, and drafted a memorandum summarizing the conversation. According to Abid, he suggested the student distance himself from Simon to avoid any accusation of impropriety. Further, he stated in the memorandum that Simon was too friendly toward male students, and "could be a danger" to students. Kneibel also spoke with Simon about what she observed at the mass, indicating in a memorandum regarding the conversation, that she told Simon to keep her interactions with students professional but reassured Simon that she did not believe the concerning behavior was sexual in nature.

With regard to Simon's behavior at Catholic Central, a former hockey teammate and classmate of plaintiff's testified that Simon would hug plaintiff in the school hallways in between classes, and that the two openly acted like boyfriend and girlfriend. Further, according to this former teammate, three Catholic Central football coaches, including Shelton, knew Simon and plaintiff were carrying on a sexual relationship. Additionally, at a mass held in April 2013 for plaintiff's sister who was gravely ill at the time, Deja, Catholic Central's principal, observed

---

[3] All Diocese employees having regular contact with students must complete sexual abuse training entitled Protecting God's Children. Simon completed the training on September 20, 2012.

[4] Plaintiff attended Catholic Central, not West Catholic.

plaintiff sitting with Simon rather than with his family, which Deja said he found odd. However, Deja testified that the incident did not lead him to believe Simon was sexually abusing plaintiff.

Plaintiff filed suit against defendants and Simon on November 20, 2015, alleging claims of direct negligence and vicarious liability for the abuse Simon perpetrated against him. In response, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10), requesting dismissal of plaintiff's claims against them. In so doing, defendants asserted that Maj owed no duty in loco parentis to plaintiff because his employment with the Diocese ended in January 2013, before the sexual abuse began, Deja and Shelton owed no duty because Simon's abuse was not foreseeable and occurred off school property, and any negligence on the part of the individual defendants did not proximately cause the abuse. With regard to plaintiff's claims of vicarious liability, defendants argued that the Diocese could not be liable for Simon's abuse because it had no constructive or actual knowledge of prior similar conduct by Simon, or of any propensity on her part to sexually abuse minors. Finally, respecting plaintiff's claim that defendants failed to report Simon's abuse pursuant to MCL 722.623, the mandatory reporting provision of the Child Protection Law, MCL 722.621 *et seq.*, defendants contended again that Maj did not work for the Diocese at the time of the abuse, and that neither Shelton nor Deja had reasonable cause to suspect the abuse.

Ultimately, the trial court granted defendants' motion, dismissing all of plaintiff's claims pursuant to MCR 2.116(C)(10). In so doing, the court held that: (1) the Diocese could not be held liable for Simon's abuse because it had no actual or constructive knowledge of the abuse, and Simon's acts were not reasonably foreseeable – she had no criminal record, the behavior complaints at West Catholic concerned personal space boundaries, and no school staff member bore witness to the abuse; (2) plaintiff's direct negligence claims failed because he provided no legal support for his assertion that the duty in loco parentis to protect students extended to entities like the Diocese, school administrators like Maj and Deja, or non-teacher staff like Shelton, and defendants owed plaintiff no duty to prevent Simon's unforeseeable acts; and (3) plaintiff's CPL claims failed because neither Maj nor Shelton were mandatory reporters under the statute, plaintiff did not establish that Deja should have reasonably expected the abuse, and the CPL only creates a private right of action for the identified abused child.[5]

## II. ANALYSIS

We review a trial court's decision regarding a motion for summary disposition de novo. *Manzo v Petrella*, 261 Mich App 705, 711; 683 NW2d 699 (2004). A court may grant a motion for summary disposition pursuant to MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "[A] genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the 'record which might be developed . . . would leave open an issue upon which reasonable minds might differ.' " *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citations omitted). To make the determination, we must consider " 'the pleadings, admissions, affidavits, and other

---

[5] Plaintiff filed a motion for reconsideration, which the trial court denied on January 24, 2017.

relevant documentary evidence of record . . . .' " *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200, 206-207; 828 NW2d 459 (2012), quoting *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If the moving party adequately supports its motion, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

## A. VICARIOUS LIABILITY

Plaintiff first argues that the trial court erred when it rejected his claims against the Diocese under a theory of vicarious liability because Diocese employees had constructive knowledge of Simon's propensity to commit abuse, and actual knowledge of the abuse. The general rule of respondeat superior "is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business." *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006). However, an exception exists "if the employer knew or should have known of [the] employee's *propensities and criminal record* before that employee committed an intentional tort." *Hamed v Wayne Co*, 490 Mich 1, 12; 803 NW2d 237 (2011) (quotation marks and citations omitted; alteration in original). "This inquiry involves an analysis of whether an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Id*. In other words, "an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen." *Id*. at 13.

In *Brown v Brown*, 478 Mich 545; 739 NW2d 313 (2007), where a security guard sued her employer[6] after being raped by a fellow employee who had previously made sexually explicit comments to her, *id*. at 547, the Supreme Court held "that where an employee has no prior criminal record or history of violent behavior indicating a propensity to rape, an employer is not liable solely on the basis of the employee's lewd comments for a rape perpetrated by that employee if those comments failed to convey an unmistakable, particularized threat of rape," *id*. at 547-548. In so doing, it reasoned:

> [A]n employer can assume that its employees will obey our criminal laws. Therefore, it cannot reasonably anticipate that an employee's lewd, tasteless comments are an inevitable prelude to rape if those comments did not clearly and unmistakably threaten particular criminal activity that would have put a reasonable employer on notice of an imminent risk of harm to a specific victim. Comments of a sexual nature do not inexorably lead to criminal sexual conduct any more than an exasperated, angry comment inexorably results in a violent criminal assault. [*Id*. at 555.]

---

[6] The plaintiff in *Brown* originally brought her action on the basis of both vicarious liability and negligent failure to prevent rape, but only challenged on appeal the trial court's dismissal of her negligence claim. *Brown*, 478 Mich at 550 n 6. Thus, the Supreme Court decided the case based on negligence rather than the theory of vicarious liability.

Consistent with the caselaw outlined above, the trial court did not err when it dismissed plaintiff's vicarious liability claim.[7] First, there is no evidence in the record that Simon had ever sexually abused a minor prior to plaintiff. The Diocese conducted a criminal background check prior to Simon's employment, which revealed no previous criminal activity, and although plaintiff appears to question this background check, he presents nothing which shows any criminal history. Second, plaintiff's argument that from Simon's behavior throughout the school year, the Diocese should have known of Simon's propensity to abuse students, fails as a matter of law. Admittedly, plaintiff presented extensive evidence that Simon had personal space and classroom management issues that raised concerns for West Catholic employees. Abid even wrote, in his memorandum outlining the discussion he had with the West Catholic student sitting by Simon at an Ash Wednesday mass, that he believed Simon could be a danger to students. However, Kneibel spoke with Simon about her behavior, and Kneibel's memorandum of the conversation indicated that she reassured Simon no one believed Simon's actions were sexual in nature. Further, as with the employee's sexual comments in *Brown*, Simon's personal space and professionalism issues failed to convey an unmistakable propensity to sexually abuse minors, and cannot be considered an inevitable prelude to criminal sexual conduct. *Brown*, 478 Mich at 547-548, 555. Thus, we hold that plaintiff failed to establish a genuine issue of material fact that the Diocese had constructive knowledge of Simon's propensity to sexually abuse minors.[8]

Moreover, plaintiff failed to establish a genuine issue of material fact that Diocese employees had actual knowledge of the sexual abuse. Plaintiff first points to the testimony of his former teammate and classmate that football coaches John VandenBerg, Blake Smolen, and Shelton all knew that he and Simon were engaged in a sexual relationship. However, neither VandenBerg nor Smolen worked at Catholic Central during the relationship, and this former classmate said he believed Shelton knew because Shelton told Simon he was hearing things and needed to watch herself. But Shelton acknowledged telling Simon that he heard people were saying "weird things" about her and plaintiff, and testified that he did not think this meant that Simon and plaintiff were having sex. Plaintiff also cites the testimony of John Leroy Boman, plaintiff's father, that Deja told him after the sexual abuse was discovered by plaintiff's mother that he suspected something had been going on, but did nothing to stop it. However, Boman testified that Deja never specifically explained his comment to mean that he believed plaintiff and Simon had been carrying on a sexual relationship, nor is it obvious from the comment itself that Deja believed Simon had been sexually abusing plaintiff. And further, when asked if he believed anyone at Catholic Central had reason to suspect a sexual relationship before plaintiff's

---

[7] Although generally, "[w]hether the risk of harm from third-party criminal activity is foreseeable in a particular case is a question of fact for the jury," *Holland v Liedel*, 197 Mich App 60, 63; 494 NW2d 772 (1992), plaintiff failed to demonstrate that the Diocese had actual or constructive knowledge that Simon previously committed sexual abuse, or had a propensity to do so.

[8] In support of his vicarious liability claim, plaintiff cites to prosecutor Helen Brinkman's testimony about the common behaviors exhibited by sexual predators. However, the standard for imposing liability against an employer is what a reasonable employer, not an expert, knew or should have known. See *Brown*, 478 Mich at 555.

mother discovered the pictures on the cell phone, Boman said, "Not that I know of." From the record, we conclude that no genuine issue of material fact exists regarding the Diocese's actual knowledge of the abuse or Simon's propensity to sexually abuse minors. Thus, the trial court did not err when it held that the Diocese was not vicariously liable for Simon's sexual abuse of plaintiff.

## B. NEGLIGENCE

Next, plaintiff argues that the trial court erred when it held that there were no genuine issues of material fact regarding whether defendants could be held liable for their own negligent acts, because the Diocese assumed the duty to properly train its employees regarding sexual abuse, and defendants owed plaintiff a duty in loco parentis to protect him from Simon's sexual abuse, but breached that duty by failing to recognize Simon's grooming behaviors. In other words, plaintiff asserts both that defendants had a duty to protect him from Simon's sexual abuse because he and defendants had a special relationship, and that because the sexual abuse occurred, the Diocese was negligent in hiring Simon and in training its employees to identify and report sexual abuse.

"Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). In contrast to the doctrine of vicarious liability, an employer may be held directly liable for their own "negligence in hiring, training, and supervising their employees." *Zsigo*, 475 Mich at 227. Additionally, although there is generally no duty in tort[9] to protect against the criminal acts of a third person, such a duty may arise where there exists a special relationship between the plaintiff and the defendant. *Babula v Robertson*, 212 Mich App 45, 49; 536 NW2d 834 (1995).

This Court and the Michigan Supreme Court have held that a teacher stands in loco parentis to his or her students, *Gaincott v Davis*, 281 Mich 515, 518; 275 NW 229 (1937); *Cook v Bennett*, 94 Mich App 93, 98; 288 NW2d 609 (1979) (reasoning that "[a] teacher owes a duty to exercise reasonable care over students in his or her charge"), thus creating a special relationship between teacher and student. But plaintiff has failed to cite any published authority extending the duty to act in loco parentis to an institution like the Diocese, administrators like Maj and Deja, or coaches like Shelton. Absent any controlling law on the issue, plaintiff's claim fails.

Regardless, even assuming the duty extends to defendants, the trial court did not err when it dismissed plaintiff's direct negligence claims (under either theory – the doctrine of in loco parentis or negligent hiring and training) because, for all of the reasons provided above, plaintiff failed to establish a genuine issue of material fact that Simon's actions were reasonably foreseeable to the Diocese or its employees. The existence of a duty depends in part on the

---

[9] The existence of a legal duty is essential to any negligence claim. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Thus, if no duty exists, the defendant is entitled to judgment as a matter of law.

foreseeability of harm. See *Babula*, 212 Mich App at 49; *Brown*, 478 Mich at 553.[10] As Simon's sexual abuse was not reasonably foreseeable from her conduct throughout the 2012-2013 school year, defendants neither owed nor breached any duty to protect plaintiff from her actions.

## C.  CHILD PROTECTION LAW

Finally, plaintiff asserts that the trial court erred when it granted summary disposition of plaintiff's mandatory reporting claim because Abid, Kneibel, Deja, and Shelton all either knew about or suspected Simon's abuse of plaintiff, and never complied with the obligation to report the abuse pursuant to MCL 722.623. We review the grant of summary disposition, as well as statutory construction, de novo. *Manzo*, 261 Mich App at 711.

MCL 722.623(1)(a) requires certain individuals, including school administrators, counselors, and teachers, who have "reasonable cause to suspect child abuse" to report that abuse. One who fails to report suspected abuse, as required by the statute, is "civilly liable for the damages proximately caused by the failure." MCL 722.633(1); *Marcelletti v Bathani*, 198 Mich App 655, 659; 500 NW2d 124 (1993).

Plaintiff makes no mention in his brief on appeal of Maj, who left Catholic Central before the sexual abuse began, or the vicarious liability of the Diocese, thus abandoning any arguments related to these parties. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). Further, plaintiff's assertion that Abid and Kneibel are civilly liable for not reporting the potential abuse of a student at West Catholic must fail.[11] Although the evidence suggests that Simon behaved inappropriately with students at West Catholic, including a particular student during Ash Wednesday mass, there is no evidence in the record that she abused any student other than plaintiff, or that Abid or Kneibel knew of that abuse. And even if Simon had abused a student at West Catholic, plaintiff cannot assert any failure to report claims on that student's behalf, as "the Legislature intended that liability under the [Child Protection Law] be limited to claims for damages by the identified abused child about whom no report was made[.]" *Marcelletti*, 198 Mich App at 659. In other words, "Michigan's child abuse reporting statute creates a private right of action *only* in an identified abused child." *Id*. at 661.

Finally, despite plaintiff's assertions to the contrary, as discussed thoroughly above, there is no genuine issue of material fact that either Shelton[12] or Deja had actual knowledge of

---

[10] This outcome is again consistent with the decision in *Brown*, where the Supreme Court reasoned that an employer could not be held liable for the rape committed by its employee because rape was not a foreseeable result of that employee's sexually offensive speech. *Brown*, 478 Mich at 547-548, 554-555.

[11] We note that plaintiff failed to list Abid or Kneibel as defendants in his complaint or first amended complaint.

[12] The CPL does not define "teacher," and plaintiff makes no argument that Shelton, who was a football coach and study hall and lunchroom monitor at Catholic Central during the 2012-2013

Simon's abuse, or that Simon's actions were reasonably foreseeable. As such, they had no reasonable cause to suspect Simon's sexual abuse of plaintiff and, thus, no responsibility to report that abuse.

Affirmed.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Michael F. Gadola

---

school year, should be considered a teacher for purposes of the statute's mandatory reporting requirements. Thus, it is not clear that Shelton was mandated to report any abuse he may have reasonably suspected.